## FORTEZA v. ENRICH.

### APPEAL from the District Court of San Juan.

No. 718.—Decided February 7, 1912.

DIVORCE—CRUEL TREATMENT—SERIOUS INJURIES—SUFFICIENCY OF COMPLAINT—
TIME, PLACE, AND MANNER OF CRUEL TREATMENT.—A petition for divorce
is sufficient when founded upon the cruel treatment and serious injuries men-
tioned in section 164 of the Revised Civil Code and when it makes the alle-
gation that ''repeated cruelty by words and acts practiced by the defend-
ant toward the complainant beating and injuring her to such an extent as
to compel her to abandon the conjugal domicile and seek refuge with her
parents,'' it being unnecessary to set forth in the complaint the time,
place, and manner in which such cruel treatment was practiced as they
may be withheld to be brought up during the trial.

WEIGHING EVIDENCE—PARTIALITY, PASSION, OR PREJUDICE.—It not having been
shown to this court that the trial judge acted with partiality, passion, or
prejudice, or committed manifest error, his findings will not be disturbed
on appeal.

DIVORCE—RECONCILIATION—DEFENSE NOT PLEADED IN ANSWER.—Inasmuch as the
reconciliation of the spouses was not alleged in the answer it cannot be
taken into consideration for the first time on appeal.

The facts are stated in the opinion.

*Messrs. López Landrón* and *Rincón* for appellant.

*Mr. Cayetano Coll y Cuchí* for respondent.

*Mr. Charles E. Foote, fiscal,* for The People.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of
the court.

This is an appeal taken by the defendant from a judgment
of the District Court of San Juan, dated March 10 of last
year, dissolving the bonds of matrimony between the parties
on the alleged ground of cruelty, leaving the daughter born
of the union and still a minor under the *patria potestas* of
the complainant, without any special taxation of costs.

The suit was brought by Josefa Forteza, a literal copy of
whose complaint reads as follows:

''Now comes the plaintiff herein and alleges that she has been mar-
ried to the defendant since the month of October, 1909, their marriage
having taken place at Palma de Mallorca, and that a girl now in the
custody of the defendant was born of their union.

"That both plaintiff and defendant have lived together in Vega Baja under the same roof during all of last year, and that on several occasions, nearly every day, the defendant, by words and acts, cruelly treated the plaintiff, striking her and causing her bodily injuries, to such an extent that she was forced to leave the house of her husband and seek refuge with her father.

"The plaintiff, therefore, prays the court to decree the dissolution of the marriage, with costs, and that the *patria potestas* (of the child) be given to the innocent party."

The defendant in his answer admitted the first allegation of facts, but made general and specific denial of the second, not setting up any other defense. The court, after trying the case, rendered the judgment already mentioned, which is now before us on appeal.

The legal grounds assigned by appellant in support of his petition are as follows:

1. That the facts alleged in the complaint do not constitute a cause of action;

2. That the evidence introduced did not establish any legitimate ground for a decree in favor of the complainant;

3. That the action for divorce became extinguished by the reconciliation of the parties.

Cruel treatment or grave injuries is given in section 164 of the Civil Code as one of the grounds for divorce, and by connecting this ground with the second allegation made in the complaint hereinbefore transcribed, we find that the facts therein set up establish a ground for divorce, inasmuch as the repeated cruelty by words and acts practiced by the defendant upon the complainant, who was beaten and injured to such an extent that she was compelled to abandon the conjugal domicile and seek refuge with her father, is what, as a matter of fact, constitutes the cruel treatment provided for in the statute as one of the grounds for divorce.

It was not necessary that the question of time, place and manner in which such cruel treatment was practiced should be set up in the complaint, as alleged by defendant, as they could

have been withheld to be brought up during the examination of witnesses.

We likewise find that the second ground of this appeal cannot be sustained.

Four witnesses testified on behalf of complainant and five for defendant.

Let us now see what the witnesses for complainant had to say.

Juan Forteza, the father of the complainant, testified that about four months after Josefa Forteza and Conrado Enrich were married the latter began to insult and cruelly treat her on a thousand and one occasions, as his daughter had told him, and that on the day after he returned from Spain she expressed to him a desire to leave the conjugal domicile and go to her father's because only a few days before her husband had struck her on the face, the signs of which she showed him, and called her a negress, the only motive for the quarrel being money which Enrich wanted her to ask her father to give.

José Pérez testified that the complainant and the defendant did not get along at all and that they quarreled very often; that one day during the latter part of 1910, while he was in his house which is next door to the couple's home, he heard an awful disturbance and saw the Forteza girl in Enrich's arms crying and complaining of having been kicked by him; that these facts having been reported by him at the home of Juan Forteza, Josefa's mother then came and took her away.

Francisco Aguiló, the partner of Juan Forteza, says that, one day in the month of October, 1910, he saw a crowd in front of the house of Enrich, of whom he was a friend; that upon entering he saw Enrich holding his wife by the neck with one hand and in the other a revolver, which he took away from him, giving it back to him after he had emptied it. The witness further testified that Enrich had once confessed to him that one day, for a reason not known to the witness, he struck Josefa a blow on her face and that having sought refuge in the water-closet of the house, he began to throw pails of water

upon her over the uncovered top, until he forced her to come out.

Josefa Forteza, the complainant, affirms that ever since her marriage Enrich has made her life most miserable by his frequent demands that she ask her father for money. That the last time she was treated with cruelty by him was two or three days before Juan Forteza returned from Spain, on which occasion he beat and slapped her a number of times, and that having taken refuge in the water-closet of the house, she was compelled to come out by the pails of water Enrich poured over her from above. That he then kicked her in the abdomen, attention being called by her at this point to the fact that she was at that time in her last months of pregnancy. That she continued sharing her husband's home and bed until her father arrived from Spain, when she abandoned the conjugal domicile and went back to the home of her parents.

These are the facts testified to by the witnesses for the plaintiff. Let us see now what those for the defendant have to say.

Conrado Enrich, the defendant, denies having treated his wife with cruelty upon any occasion either by words or by acts, since they have always lived in perfect accord and under the same roof until December 29, 1910, when Josefa abandoned the conjugal domicile to go to that of her father at the persuasion of the latter, for the purpose of seeking a divorce. That he had had serious quarrels with his father-in-law to the extent that, one day, in Palma de Mallorca, after a show, he was assaulted and twice struck by him because he had gone to the theatre to meet his wife, who went to the show in her father's company, without his permission.

José Náter García testified that he was present when Forteza proposed to his daughter that she seek a divorce from Enrich who, he says, is a man of good disposition and too tolerant towards his father-in-law, and that no ill-treatment by words or acts can be imputed to either husband or wife, whose society he has frequented and who lived like two angels.

Brígida Meléndez stated that the plaintiff went to her parents' house and reluctantly abandoned her husband's domicile at the instance of her father, Juan Forteza, who promise to treat her as he did his other daughters and to defray the expenses of the divorce proceedings, no quarrels between the plaintiff and the defendant ever having come. within her observation.

Manuel Sandoval declared that complainant and defendant lived near his house up to December, 1910; that he has never known of any quarrels or exchange of insulting language between them, but on the contrary, that Enrich's treatment of his wife was good and that he was a man of good habits and fine address. He also stated that he once saw Forteza strike Enrich, for a reason unknown to him.

Rosa Pavón relates that she lived in the Enrich's home for about three months; that Enrich has a peaceful disposition and got along harmoniously with his wife; that Juan Forteza took his daughter from the conjugal domicile to his home, to the dissatisfaction of Enrich who gave no cause for such a decision.

Briefly stated, this is the evidence introduced by both sides, and from the facts disclosed thereby we cannot conclude that the judge of the court below was actuated by partiality, passion or prejudice, or that he has committed any manifest error in his findings.

We have said on a previous occasion that when the testimony is contradictory the jury, or in its stead the trial judge, has a right to harmonize it when possible, or, if not, to decide which side should be given credence. The court below believed the testimony of the witnesses for the plaintiff, and that court certainly was in a better position to weigh the evidence than we are, since we were not present at the hearing, did not see the witnesses or hear them testify and have not had an opportunity to observe the manner in which they testified and their hesitation, if any.

While it is true that we have before us the written state-

ment of facts setting forth the evidence introduced, that instrument does not present for our consideration the scene of the trial with the same vividness of color and fulness of detail as it transpired in the court below.

Therefore, we accept the findings of fact of the said court, which are supported by the evidence, and in so doing are forced to the same conclusions of law reached by the court below in sustaining the complaint.

As to the third ground of the appeal, inasmuch as the reconciliation was not alleged in the answer, we cannot now take it into consideration.

For the reasons above stated the judgment appealed from should be affirmed.

*Reversed.*

Justices MacLeary, Wolf, del Toro and Aldrey concurred.